### UNITY INSURANCE COMPANY *v.* CRAM.

No voluntary association formed under the provisions of the Revised Statutes (ch. 145, Comp. Stat. 365) will be legal or be authorized to transact business as such, unless its members have complied with the provisions of the second section of said chapter, by subscribing the articles of agreement, nor unless due notice has been given of its formation, name, and object, according to the provisions of the fifth section of said chapter.

ASSUMPSIT to recover the amount due upon a promissory note, of which the following is a copy :

"For value received in policy No. 18, insured by the Unity Mutual Fire Insurance Company, on the 1st day of January, 1858, for $1,000, I promise to pay said company, or their treasurer for the time being, the sum of fifty dollars, in such portions and at such time or times as the directors of said company, agreeably to their articles of agreement and by-laws, require.

$50.                                              JOSEPH CRAM."

Indorsed on the back of said note is the following :

" No. 18. Deposit Note $50. Received fifty cents, being one per cent of this note.

A. PERKINS, Treasurer."

The writ is dated August 13, 1861, and contains two special counts, and a count for money had and received.

The plaintiff's book of records commences as follows :

" Proceedings of the Unity M. F. Ins. Company."

" NOTICE.

The inhabitants of the town of Unity are hereby notified that a meeting will be held at the Town Hall, in Unity, on Thursday, the first day of October next, at 1 o'clock P. M., for the purpose of considering the expediency of forming a Mutual Fire Insurance Company in said town, and for organizing the same, if thought proper, agreeably to the provisions of chapter 152 of the Compiled Statutes of New-Hampshire.

AMOS PERKINS,
JENISON GLIDDEN,
J. H. STRAW,
J. B. PERKINS,
JOHN GILMORE.

Unity, September 15, 1857.

## "STATE OF NEW–HAMPSHIRE—Sullivan ss.

Unity, October 1, 1857. Agreeably to the above notice, the inhabitants of Unity met at the town hall, and proceeded to transact the following business, to wit:

1. Made choice of John Gilmore, Esq., Chairman. 2. Chose Amos Perkins, Secretary. 3. Voted to circulate notices through town to obtain subscribers, favorable to the formation of the contemplated association. 4. Voted to adjourn to the 17th day of October instant, to meet at this place at 1 o'clock P. M.

A. Perkins, Secretary."

"October 17, 1857. Met pursuant to adjournment, when, the Chair being vacant, chose Moses Johnson, Chairman *pro tem.* Voted to adjourn to Saturday, the 7th day of November next, at 1 o'clock P. M., at this place.

A. Perkins, Secretary."

"November 7, 1857. Met agreeably to adjournment. Voted that it is expedient to form ourselves into a company by the name and style of 'the Unity Mutual Fire Insurance Company.' Adjourned to the 21st day of November instant, at 1 o'clock in the afternoon.

A. Perkins, Secretary."

"November 21, 1847. Met pursuant to adjournment, and proceeded to the following business: 1. Voted unanimously to publish, in the Argus & Spectator, the following

### NOTICE.

Public notice is hereby given that we, the subscribers, of Unity, in the county of Sullivan and State of New-Hampshire, have this day, pursuant to previous notice, met at the town hall in said Unity, and organized ourselves into a corporation as a Mutual Fire Insurance Company, by the name and style of 'the Unity Mutual Fire Insurance Company,' for the purpose of insuring our respective dwelling-houses and other buildings, with their contents, against loss or damage by fire, subject to such restrictions as may be hereafter adopted, agreeably to the provisions of ch. 152 of the Compiled Laws of said State. Dated at Unity, the 21st day of November, A. D. 1857.

(Signed) Amos Perkins, John Gilmore, Benjamin Quimby, Aaron C. Marshall, John Lufkin, Jenison Glidden, William C. Hobart.

2. Voted to choose a committee of three to prepare articles of agreement and by-laws for the company, and report at the next meeting.

Made choice of Amos Perkins, John Gilmore, and Benjamin Quimby, said committee.

Voted to adjourn to the 5th day of December next, at 1 o'clock P. M. A. Perkins, Secretary."

"December 5, 1857. Met agreeably to adjournment.

1. The committee appointed for the purpose reported a form of a blank policy, together with articles of agreement and by-laws for

said association; 'also, application for insurance; which report, after a slight amendment, was unanimously accepted and adopted by the company.

The application, blank policy, articles of agreement, and by-laws, reported by the committee, are as follows in printed form."

The first notice referred to in the records was given by posting up a copy of the same at the post-office in said Unity, on the day of the date thereof.

The second notice referred to in the records, including the signatures thereto, was written by the secretary, and was published three weeks successively in the Argus & Spectator, the first publication being November 27, 1857.

After these records were attached, firstly, a printed form, for an insurance application and premium note, similar in form to the note in suit; and, secondly, a printed form for a policy of insurance, on the back of which are printed, "Articles of Agreement," and printed "By-Laws." The printed "Articles of Agreement," containing ten different articles, were not subscribed by any one; but the first and second articles were in the following language:

"Article 1. We, Amos Perkins, John Gilmore, Benjamin Quimby, Aaron C. Marshall, Nathaniel Lull, John Lufkin, William C. Hobart, Silas M. Gee, Absalom Millen, Joseph M. Perkins, Joel Bartlett, Nathan Glidden, and Moses Johnson, do hereby associate together by the name of the Unity Mutual Fire Insurance Company, for the. purpose of insuring our respective dwelling-houses and other buildings, with their contents, against loss or damage by fire, lightning, or any other means, excepting that of design in the insured, or by invasion of an enemy, or insurrection of the citizens of this or any other of the United States; and by that name may sue and be sued, plead and be impleaded, appear, prosecute and defend, in any court of record, or other place whatsoever; may use a common seal; may make, establish, and put in operation such by-laws, ordinances and resolutions, not being contrary to the laws of the State, as may seem necessary for the regulation, government, and purposes of this association.

Article 2. All persons who shall become interested in said company, by being insured therein, and also their respective heirs, executors, administrators and assigns, continuing to be insured therein, shall be deemed and taken to be members thereof for and during the term specified in their respective policies, and no longer, and shall at all times be concluded and bound by the provisions of these articles."

In said printed form of "by-laws" are these provisions:

"All assessments shall be determined by the directors, and notice thereof given, by posting up an advertisement in three or more public places in Unity, thirty days prior to the time of such payment."
"And if any member shall, for the space of thirty days after such notice, neglect or refuse to pay the amount assessed on them as their proportion of loss, as aforesaid, in such case the whole amount of said note or notes may be sued for and recovered, with costs of suit. The money thus collected is to remain in the treasury, subject to its

proportion of such losses and expenses as may thereafter accrue during the time of such insurance; the balance, if any, to be returned to the insured after thirty days from the expiration of said term." ·

After said printed forms, the records are continued as follows:

" 2. Proceeded to organize agreeably to the articles of agreement and by-laws of the company, just adopted. Voted to choose three directors to serve until the next annual meeting. Made choice of John Gilmore, Aaron C. Marshall, and Silas M. Gee, Directors. Made choice of Amos Perkins, Secretary. Chose Amos Perkins, Treasurer. Voted to procure one hundred blank policies, and the same number of blank applications printed.

Voted to commence issuing policies of insurance on the 1st day of January, A. D. 1858. Adjourned.

A. PERKINS, Secretary.

A true record—attest:              A. PERKINS, Secretary."

It appears from the records that November 6, 1858, the directors voted, for the purpose of paying the liabilities of the company, to levy and collect an assessment of twenty-four per cent of the whole amount of the premium notes of the company, to be paid to the treasurer on or before the first day of January, 1859.

The records also show that the company, prior to June 1, 1859, had insured property to the amount of $26,240 only, and prior to June 6, 1860, property to the amount of $49,940 only.

The records also show that the company has sustained but one loss; that such loss was in October, 1858, and for $325, which, though adjusted prior to June 1, 1859, has never been paid only in part.

It also appears from the records that at a meeting of the company, June 1, 1859, it was voted that the secretary procure the signatures of all the members of the company to the articles of agreement and by-laws of the association, though this was never done, except as hereinafter stated.

June 2, 1858, the directors, as the records show, reported the standing of the company as follows:

| | | |
|---|---|---|
| Whole amount insured, | | $24,840.00 |
| Whole number of policies issued, thirty-seven. | | |
| Whole amount of capital stock on premium notes, | | 1,270.00 |
| Cash premiums received, | | 12.70 |
| Paid printers, | $11.00 | |
| Blank books, | .45 | |
| | | $11.45 |
| Cash on hand, | | 1.25 |

June 1, 1859, as the records further show, the directors reported the affairs of the company as follows:

| | |
|---|---|
| Whole amount insured, | $26,240.00 |
| Whole amount of capital stock, or premium notes, | 1,348.00 |
| Loss sustained by the company in October last, | 325.00 |
| Cash premiums received, including $1.25 on hand at last annual meeting, | 2.03 |

Cash received on assessments, and paid to Mr. Nichols, 142.24
Paid for blank book, .20
Amount due Mr. Nichols toward said loss, $180.76
On the 6th of November, 1858, there were no liabilities of the company except the Nichols loss of $325.

The condition of the company was never examined into by the Insurance Commissioners of the State. In said printed ".Articles of Agreement" there is no limitation of insurance to the town of Unity, but in said printed "By-Laws" there is such a limitation.

On the first of January, 1858, the defendant, supposing the company had the right to issue policies of insurance, though knowing nothing of their proceedings, received from the secretary a policy of insurance, purporting to be issued by the company, and to insure his property for the sum of one thousand dollars for six years, for which policy the defendant paid fifty cents, and gave the note in suit. Such policy was in form similar to the printed form before referred to, and on the back of the policy were articles of agreement and by-laws, similar to those before referred to; and previous to or at the time of taking said policy he signed and delivered to said company an application, filled up by the secretary, like in form to the printed application herein before referred to, said premium note being on the same sheet of paper. In such application the defendant, among other things, "held himself bound and obliged, according to the articles of agreement and by-laws annexed to his policy."

Notice of the assessment of the 6th of November, A. D. 1858, was given by posting up in three public places, in the town of Unity, on the 25th day of November, A. D. 1858, a notice, of which the following is a copy :

"INSURANCE NOTICE. The members of the Unity Mutual Fire Insurance Company are hereby notified that an assessment of twenty-four per cent upon all the premium notes has been made and levied by the directors, to be paid to the treasurer for the time being on or before the first day of January, A. D. 1859. Assessments being the order of the day, it is expected that every member will promptly pay their proportion of the extraordinary loss which has recently occurred in the company, and thereby avoid the liabilities imposed by the second and third sections of the by-laws of the corporation. Per order of the directors.

Unity, November 8, 1858. AMOS PERKINS, Secretary."

It was agreed that if the court shall be of opinion that the plaintiffs were a corporation on the 1st day of January, A. D. 1858, and as such had a right to issue a policy of insurance to the defendant, and that the assessment made on the 6th day of November, A. D. 1858, was legally made, judgment shall be rendered for the plaintiffs; otherwise judgment shall be rendered for the defendant, with liberty of review to either party; and the questions of law arising on the case were reserved and transferred to the law term.

*Colby & Brooks*, for the plaintiffs.

*Snow*, for the defendant.

SARGENT, J.   These plaintiffs were not a corporation entitled to issue a policy to the defendant or any body else.

1. It does not appear that the members or any members of the association ever subscribed the articles of agreement or association, as the statute requires.   Section 2 of chapter 145, Revised Statutes, Comp. Stat. 366, provides that " every such association shall be formed by written articles, specifying the objects of the association, the conditions on which it is formed, and subscribed by each member thereof."

Assuming that it might be a sufficient compliance with this provision of the statute, that the articles of agreement were printed in this case instead of written — and we see no reason why that might not be a substantial compliance with the spirit and intent of the law in that particular, and therefore sufficient — yet the express provision that such articles must be subscribed by each member of such association, is and ought to be, we think, imperative ; and until this is done the plaintiffs have not taken the first step in order to place themselves in a position to claim any rights or privileges under the provisions of this statute.

2. Section 5 of this same chapter provides that " every such corporation shall give public notice of its formation, name, and object, by publishing such notice three weeks successively in some newspaper printed in the county, &c., and also by posting a like notice in one or more public places in the town in which such association is formed and located."

In this case a notice was published in the newspaper, but whether in proper form or not, we need not stop to inquire ; since it is admitted that no similar notice was posted in the town.   It would seem that a notice had been given in town, calling the people to come together to consider the expediency of forming such a company, but where, when, or by whom such notice had been posted, or how the notice had been given, does not appear.   It only appears that, agreeably to such notice, the inhabitants of Unity met, &c. But no notice like the one printed in the paper was posted in town, or any where, giving notice that such association had been formed, with its name and object, as the statute requires.   This notice in the town is made as necessary by the statute as the one in the paper.   Both are required in every such case, and a part performance is not sufficient.   Any thing less than a legal notice is no notice at all.

It becomes unnecessary, therefore, to consider farther the objections made to the plaintiffs as a legal association, or to consider what they did or omitted to do in voting and ordering assessments.
*There must be judgment for the defendant, open to review.*